2002 OK CR 17

**The STATE of Oklahoma, Appellant,**

v.

**Frankie HOWERTON, Appellee.**

No. SR–2001–242.

Court of Criminal Appeals of Oklahoma.

April 11, 2002.

James E. Wallace, Grove, OK, Attorney for Defendant at trial.

Kathy Lungren Baker, Assistant District Attorney, Delaware County, Jay, OK, Attorney for the State at trial and on appeal.

James E. Wallace, Grove, OK, Representing the Trial Court on appeal.

## OPINION

LILE, J.:

¶ 1 Frankie Howerton was charged with one count of Owning or Operating a Chop Shop, 63 O.S.Supp.1998, § 4253A, and five counts of Knowingly Concealing Stolen Property, 21 O.S.1991, § 1713, in the District Court of Delaware County, Case No. CF–98–301. Howerton filed a motion to suppress the evidence alleging, generally, that the search of the premises was in violation of the Fourth Amendment to the United States Constitution.

¶ 2 The Honorable Robert G. Haney, District Judge, ruled that Title 63 O.S.Supp. 1998, § 4209.8 is unconstitutional because its administrative inspection provision violates the 4th Amendment rule against unreasonable searches and seizures. The evidence discovered during the inspection, as well as evidence recovered pursuant to a follow-up search warrant, was suppressed. Subsequently, the Trial Court granted a motion to quash the Information because the State, without the suppressed evidence, had insufficient evidence to proceed.

¶ 3 The State, taking exception to the Trial Court's ruling, announced its intent to appeal the ruling of unconstitutionality pursuant to 22 O.S.1991, §§ 1053 & 1053.1.

¶ 4 The State presented the following issue to this Court for determination:

Whether 63 O.S.Supp.1998, § 4209.8, violates the provision against unreasonable searches and seizures found in the 4th

Amendment to the United States Constitution.[1]

¶ 5 We find that Title 63 O.S.Supp.1998, § 4209.8, which was initially enacted in 1997, does not violate constitutional prohibitions against unreasonable searches and seizures.

¶ 6 Lake Patrolman Randy Bland, along with two Grand River Dam Authority lake patrolmen, went to Frankie's Marine to conduct an administrative inspection. The visit was prompted by discrepancies on some title applications that Frankie Howerton submitted to the Oklahoma Tax Commission. Howerton was not at the business when Bland arrived, so he waited for the owner to return.

¶ 7 When Howerton arrived, Bland told him why they were there. Howerton stated, "Well, I was wondering when you guys were going to show up." Howerton said that he was buying motors from out of state and that the paperwork he was getting with the motors was off one or two numbers, so he was changing the paperwork to match the serial numbers on the motors and then sending the paperwork in with the title applications.

¶ 8 Bland asked if he could look around and Howerton said "sure." Howerton took Bland to a room containing about 75 outboard motors. Howerton showed Bland a few of the motors that he had trouble getting registered. One of these motors had the serial number removed.

¶ 9 They then went to another building where there were about 200 outboard motors and two or three boats. Two other officers arrived sometime during the inspection. One of the motors had the cables and wires from a boat still attached, and it appeared that the motor had never been in the water. There was also a bass boat in the building that Howerton said he was storing for someone; however, Howerton could not provide the name of the person. A check of the serial number of that boat indicated that it was stolen. At this point the administrative inspection was ceased and a search warrant was obtained.

¶ 10 Title 63 O.S.Supp.1998, § 4209.8, relates to boats and related equipment and provides that,

Any peace officer of the State of Oklahoma may inspect any vessel, motor, trailer, or related equipment in any public garage or repair shop or in any place where such vessel, motor, trailer or related equipment is being held for sale or wrecking, for the purpose of locating stolen vessels, motors, trailers, or related equipment and investigating the title and registration of those items.

¶ 11 The Trial Court relied on the provisions of *New York v. Burger*, 482 U.S. 691, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987), as it relates to administrative searches and ruled that the statute did not limit the discretion of officials as to when they could search; therefore, the statute was unconstitutional.

■ ¶ 12 The *Burger* case set forth specific criteria to be evaluated in determining the constitutionality of an administrative inspection (search). The *Burger* case also establishes that, "An expectation of privacy in commercial premises . . . is different from, and indeed less than, a similar expectation in an individual's home." *Burger*, 482 U.S. at 700, 107 S.Ct. at 2642. *See also Donovan v. Dewey*, 452 U.S. 594, 598–99, 101 S.Ct. 2534, 2538, 69 L.Ed.2d 262 (1981) (The greater latitude to conduct warrantless inspections of commercial property reflects the significantly different expectation of privacy in commercial property compared to the sanctity accorded an individual's home). Moreover, "[t]his expectation is particularly attenuated

---

1. On July 16, 2001, this Court ordered that, despite the fact that the Petition in Error was not timely filed, the portion of the State's appeal brought pursuant to 22 O.S.1991, § 1053.1 (providing for automatic appeals in matters where a district court has determined an act of the State Legislature to be unconstitutional) would be heard by this Court.

The language of Section 1053.1 specifically makes the appeal automatic. We find that automatic indicates that no action is necessary for the judgment to be on appeal to this Court. Thus, while we urge compliance with our Court Rules, the language of Section 1053.1 prevents us from not hearing an appeal when a District Court has declared a statute unconstitutional.
*State v. Pratt*, 1991 OK CR 95, ¶ 4, 816 P.2d 1149, 1151.
We shall not answer the State's second issue involving the validity of consent to search, as the State's Petition in Error was not timely filed.

in commercial property employed in 'closely regulated' industries." *Burger*, 482 U.S. at 700, 107 S.Ct. at 2642.

¶ 13 The *Burger* case establishes that, to be reasonable, warrantless inspections of pervasively regulated businesses must meet a three-part test:

First, there must be a "substantial" government interest that informs the regulatory scheme pursuant to which the inspection is made. . . .

Second, the warrantless inspections must be "necessary to further the regulatory scheme." . . .

Finally, "the statute's inspection program, in terms of the certainty and regularity of its application, [must] provid[e] a constitutionally adequate substitute for a warrant." In other words, the regulatory statute must perform the two basic functions of a warrant: it must advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officers. To perform this first function, the statute must be "sufficiently comprehensive and defined that the owner of commercial property cannot help but be aware that his property will be subject to periodic inspections undertaken for specific purposes." In addition, in defining how a statute limits the discretion of the inspectors, we have observed that it must be "carefully limited in time, place and scope."

*Burger*, 482 U.S. at 702–03, 107 S.Ct. at 2644 (citations omitted).[2]

¶ 14 Our search of the statutes reveals that public garages, repair shops and places where vessels, motors, trailers, or related equipment are held for sale or wrecking are closely regulated businesses.[3] The regulations cover dealers of both new and used vessels and motors. This close regulation promotes a substantial government interest in protecting consumers from fraudulent vessel and motor dealers. The statute in question specifically addresses the significant problem of vessel and motor theft in Oklahoma and the use of seemingly legitimate businesses to hide the transportation, trade and trafficking in stolen vessels and motors.

¶ 15 It is quite rational for the State to believe that regulations aimed at preventing vessel and boat dealers from becoming marketing venues for stolen vessels and motors will logically help reduce theft. It is also rational to find that in order for such regulations to be effective, warrantless inspections are necessary. *See Horner*, 836 P.2d at 682. Thus the requirements of "substantial" governmental interest and "necessity" of administrative inspections "to further the regulatory scheme" are satisfied.

¶ 16 Finally we must determine whether this statute in particular provides, in terms of certainty and regularity of its application, a constitutionally adequate substitute for a warrant as is required by *Burger*.

Statutes are presumed constitutional; and, if possible, this Court has a duty to construe statutes in a manner which does not run afoul of the constitution. *State v. Hunter*, 787 P.2d 864, 865 (Okl.Cr.1990). It also has a duty to liberally construe statutes "with a view to effect their objects and to promote justice." 25 O.S.1991, § 29. With those dictates in mind, we shall re-examine the statute to determine if a constitutionally sound interpretation can be found.

*Gonseth v. State*, 1994 OK CR 9, ¶ 8, 871 P.2d 51, 54.

A strong presumption exists in favor of legislative enactments and the constitutionality of a statute will be upheld unless it is "clearly, palpably, and plainly inconsistent with fundamental law. [citation omitted]"

2. In *Horner v. State*, 1992 OK CR 46, ¶ 13, 836 P.2d 679, 682, this Court applied the *Burger* criteria and held that 47 O.S.Supp.1988, § 591.6, was constitutional as it provided for an administrative search of a closely regulated business, an automobile salvage yard.

3. Vessel and motor dealers must be licensed and they must comply with certain reporting provisions regarding the transfer of vessels or motors. 63 O.S.Supp.1993, § 4033. A vessel and motor dealer may have his license revoked if certain regulations are not followed. 63 O.S.Supp.1993, § 4041.

*Rivas v. Parkland Manor,* 2000 OK 68, ¶ 8, 12 P.3d 452, 456.

¶ 17 This statute informs the owner of an establishment where vessels, motors, or trailers are being held for sale or wrecking that the inspection is limited in scope and place to vessels, motors, trailers or related equipment held at the place of business. This statute also limits inspection to times where any such vessel, motor trailer or related equipment is being held for sale or wrecking. We interpret this to mean during reasonable business hours on business days. The inspection made in this case occurred during regular business hours and was constitutionally conducted in this case.

¶ 18 We have held:

The traditional rule is that a person to whom a statute may constitutionally be applied may not challenge that statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the Court. [citation omitted]

*Wilkins v. State,* 1999 OK CR 27, ¶ 6, 985 P.2d 184, 185. We said in *State v. Johnson,* 1992 OK CR 72, ¶ 3, 877 P.2d 1136, 1139:

It is a fundamental principle of constitutional adjudication that "a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court." *Broadrick v. Oklahoma,* 413 U.S. 601, 610, 93 S.Ct. 2908, 2915, 37 L.Ed.2d 830, 839 (1973). A statute is presumed to be constitutional and the person alleging its unconstitutionality has the burden of proving same beyond a reasonable doubt. *Nunley v. State,* 660 P.2d 1052, 1056 (Okl.Cr.1983); *S.A.H. v. State,* 753 P.2d 381, 383 (Okl.Cr. 1988). Appellees have failed to carry that burden. [footnote omitted]

¶ 19 Since Howerton's business was searched at a reasonable time, during business hours, he does not have standing to argue that the statute should be held facially void because other persons could conceivably be searched at an unreasonable time, outside of business hours.

¶ 20 We find that this statute, as construed by us to be limited to business hours, complies with the 4th Amendment's prohibition of unreasonable searches and seizures. Therefore, we reverse the trial court and remand this case for further proceedings.

**DECLARATION OF UNCONSTITUTIONALITY OF STATUTE REVERSED.**

LUMPKIN, P.J., JOHNSON, V.P.J., CHAPEL, J., and STRUBHAR, J., concur.