2012 OK CR 8

**Patrick Dwayne MURPHY, Petitioner,**

**v.**

**The STATE of Oklahoma, Respondent.**

**No. PCD–2004–321.**

Court of Criminal Appeals of Oklahoma.

April 5, 2012.

ject matter jurisdiction to hear allegations of intrinsic fraud committed during Commission

proceedings. *Id.*

Gary Henry, Norman, OK, counsel for petitioner at trial and on appeal.

O.R. Barris, Assistant District Attorney, McIntosh County, Eufaula, OK, counsel for the state at trial.

E. Scott Pruitt, Attorney General of Oklahoma, Jennifer L. Crabb, Assistant Attorney General, Oklahoma City, OK, counsel for the State on appeal.

## *OPINION AFFIRMING ORDER OF TRIAL COURT ON CLAIM OF MENTAL RETARDATION AND DENYING POST–CONVICTION RELIEF*

LUMPKIN, J.

¶1 Petitioner, Patrick Dwayne Murphy, was convicted of First Degree Murder in McIntosh County District Court Case no. CF–1999–164A and sentenced to death. He appealed his conviction in Case no. D–2000–705. We affirmed his conviction and sentence. *Murphy v. State*, 2002 OK CR 24, 47 P.3d 876. Petitioner then sought post-conviction relief, but was denied. *Murphy v. State*, 2002 OK CR 32, 54 P.3d 556 (resolving all claims except mental retardation); *Murphy v. State*, 2003 OK CR 6, 66 P.3d 456 (denying mental retardation claim).

¶2 Thereafter, Petitioner filed his second application for post-conviction relief. On December 7, 2005, we remanded this matter for a jury trial on Petitioner's mental retardation claim, but denied all other requested relief. *Murphy v. State*, 2005 OK CR 25, 124 P.3d 1198.

¶ 3 Pursuant to this Court's December 7, 2005 decision, the Honorable Thomas Bartheld, District Judge of McIntosh County, empanelled a jury and held trial on Petitioner's claim of mental retardation from September 14, 2009 through September 17, 2009. At the conclusion of the trial, the jury found Petitioner was not mentally retarded. On September 25, 2009, the District Court set aside that verdict and declared a mistrial because neither party had been afforded the proper number of peremptory challenges.[1] The case was reset for jury trial.

¶ 4 Before the next jury date, the State filed its Renewed Motion to Terminate Further Proceedings pursuant to 21 O.S.Supp. 2006, § 701.10b. On January 27, 2011, the District Court granted the State's motion and terminated the proceedings. The District Court filed its Findings of Fact and Conclusions of Law in this Court on May 24, 2011.

¶ 5 The district court record, trial court transcripts and exhibits were filed with the Clerk of this Court on October 12, 2011. Respondent filed its Supplemental Brief of Respondent Following Remanded Mental Retardation Proceedings on November 1, 2011. On November 2, 2011, Petitioner filed his Brief on Remanded Mental Retardation Proceedings. Petitioner raises four propositions of error arising from the trial court's termination of the mental retardation proceedings:

1. The District Court of McIntosh County violated this Court's Opinion and Mandate by failing to comply with this Court's remand order.

2. The District Court denied Petitioner of his procedural due process rights by granting the State's renewed, and previously denied, motion to terminate proceedings.

3. The actions of the District Court denied Petitioner his substantive right to due process because the unsettled nature of his mental retardation claim permits the possible execution of a mentally retarded individual.

4. The District Court's use of a single intelligence quotient score above 76 violated Petitioner's State and Federal rights to due process and to be free from ex *post facto* application of the law.

¶ 6 "[T]here is no new right to appeal established when a person is granted post-conviction relief and allowed a remanded jury determination on the question of mental retardation." *Salazar v. State*, 2004 OK CR 4, ¶ 3 n. 1, 84 P.3d 764, 766 n. 1. Instead, the post-conviction application remains pending with this Court. *Id.*, 2004 OK CR 4, ¶ 6, 84 P.3d at 766; 22 O.S.Supp.2004, § 1089(D)(5). Errors alleged to have occurred during the jury trial on mental retardation are reviewed by this Court through supplemental briefing after the trial court has filed its findings of fact and conclusions of law. *Id.*, 2004 OK CR 4, ¶ 3 n. 1, 84 P.3d at 766 n. 1; *Salazar v. State*, 2005 OK CR 24, ¶ 5, 126 P.3d 625, 627. We review such claims of error in the same manner as errors raised on direct appeal. *Myers v. State*, 2005 OK CR 22, ¶ 5, 130 P.3d 262, 265.

¶ 7 In his first proposition of error, Petitioner contends that the district court's decision to terminate the mental retardation proceedings instead of holding a jury trial was contrary to this Court's December 7, 2005 Opinion.

¶ 8 Petitioner preserved review of this issue by raising this challenge at the hearing held on the State's motion to terminate the mental retardation proceedings. *Simpson v. State*, 1994 OK CR 40, ¶ 2, 876 P.2d 690, 692. As the issue involves purely a question of law, we review the district court's interpretation of the law *de novo*. *Smith v. State*, 2007 OK CR 16, ¶ 40, 157 P.3d 1155, 1169.

---

1. At that time this error was considered structural error and not subject to harmless error review. *Golden v. State*, 2006 OK CR 2, ¶ 18, 127 P.3d 1150, 1155. However, in *Robinson v. State*, 2011 OK CR 15, 255 P.3d 425, this Court recognized that the failure of the trial court to afford a defendant his full complement of statutorily-required peremptory challenges does not constitute structural error but instead is subject to harmless error analysis. *Id.*, 2011 OK CR 15, ¶ 12, 255 P.3d at 430 (*overruling Golden v. State*, 2006 OK CR 2, 127 P.3d 1150.).

¶ 9 We remanded this case "to the District Court of McIntosh County for a jury trial on Petitioner's mental retardation claim, consistent with this opinion and the procedures adopted by this Court in our recent mental retardation jurisprudence." *Murphy,* 2005 OK CR 25, ¶ 59, 124 P.3d at 1209. The district court held a jury trial on Petitioner's claim of mental retardation from September 14, 2009 through September 17, 2009. At the conclusion of the trial, the jury unanimously found Petitioner was not mentally retarded. On September 25, 2009, the District Court set aside that verdict and declared a mistrial because neither party was afforded the proper number of peremptory challenges. The case was reset for jury trial. On December 8, 2010, the State filed its Renewed Motion to Terminate Further Proceedings Pertaining to the Alleged Mental Retardation of the Defendant. The State alleged that termination of the proceedings was appropriate under 21 O.S.Supp.2006, § 701.10b because Petitioner had an intelligence quotient of eighty (80) on an individually administered, scientifically recognized, standardized intelligence quotient test administered by a licensed psychiatrist or psychologist. The District Court held a hearing on the State's motion. Both the State and Petitioner were afforded the opportunity to present evidence and argument. The District Court found that Petitioner had received two separate intelligence quotients above seventy-six (76) on scientifically recognized, standardized intelligence quotient tests, granted the State's motion and terminated the proceedings pursuant to § 701.10b and *Smith v. State,* 2010 OK CR 24, 245 P.3d 1233.

¶ 10 The Legislature has given capital defendants in Oklahoma the benefit of the standard measurement of error for the intelligence quotient test administered. *Id.,* 2010 OK CR 24, ¶ 10, 245 P.3d at 1237. However, § 701.10b disqualifies any individual from being considered mentally retarded for the purpose of a sentence of death if that individual has received an intelligence quotient of seventy-six (76) or above on any scientifically recognized standardized intelligence quotient test, to wit:

C. The defendant has the burden of production and persuasion to demonstrate mental retardation by showing significantly subaverage general intellectual functioning, significant limitations in adaptive functioning, and that the onset of the mental retardation was manifested before the age of eighteen (18) years. An intelligence quotient of seventy (70) or below on an individually administered, scientifically recognized standardized intelligence quotient test administered by a licensed psychiatrist or psychologist is evidence of significantly subaverage general intellectual functioning; however, it is not sufficient without evidence of significant limitations in adaptive functioning and without evidence of manifestation before the age of eighteen (18) years. In determining the intelligence quotient, the standard measurement of error for the test administrated shall be taken into account.

However, in no event shall a defendant who has received an intelligence quotient of seventy-six (76) or above on any individually administered, scientifically recognized, standardized intelligence quotient test administered by a licensed psychiatrist or psychologist, be considered mentally retarded and, thus, shall not be subject to any proceedings under this section.

21 O.S.Supp.2006, § 701.10b(C); *See also Smith,* 2010 OK CR 24, ¶ 10, 245 P.3d at 1237.

¶ 11 Relying upon evidence from the jury trial held on Petitioner's claim of mental retardation, the District Court found that Petitioner had received two separate intelligence quotients above seventy-six (76) on scientifically recognized, standardized intelligence quotient tests. A review of the trial transcripts reflects that Petitioner received an intelligence quotient of eighty (80) on a test administered by Faust Bianco, Jr., Ph.D. Petitioner introduced Dr. Bianco's deposition testimony at trial. Dr. Bianco was a licensed neuropsychologist retained by the Indigent Defense System. In addition, the State introduced evidence at the trial that Petitioner had attained an intelligence quotient of eighty-two (82) on a test administered by

Teresa Hall. Dr. Hall was a licensed forensic psychologist retained by the State.

¶ 12 Petitioner asserts that 21 O.S.Supp. 2006, § 701.10b, does not apply to his case. Instead, he asserts that the standards adopted by this Court in *Pickens v. State*, 2003 OK CR 16, 74 P.3d 601, *Lambert v. State*, 2003 OK CR 11, 71 P.3d 30, and *Salazar v. State*, 2004 OK CR 4. 84 P.3d 764, apply to his case. We find that the District Court correctly applied § 701.10b to Petitioner's case.

¶ 13 In *Smith v. State*, 2010 OK CR 24, 245 P.3d 1233, this Court determined that § 701.10b governs the death penalty and mental retardation in Oklahoma.

> *Atkins* did not set out an explicit definition for mental retardation, but left it to the states to develop ways to identify mentally retarded criminals and exempt them from the death penalty. *See id.* at 317, 122 S.Ct. at 2250 ("we leave to the State[s] the task of developing appropriate ways to enforce the constitutional restriction upon execution of sentences") (*quoting Ford v. Wainwright*, 477 U.S. 399, 416–417, 106 S.Ct. 2595, 2605, 91 L.Ed.2d 335 (1986)). Four years after *Atkins*, the Oklahoma Legislature enacted 21 O.S. Supp.2006, § 701.10b. Section 701.10b governs the death penalty and mental retardation....

*Smith*, 2010 OK CR 24, ¶ 3, 245 P.3d at 1235 (*citing Atkins v. Virginia*, 536 U.S. 304, 321, 122 S.Ct. 2242, 2252, 153 L.Ed.2d 335 (2002)). This Court applied Section 701.10b to Smith's 2003 convictions for first degree murder and sentences of death. *Id.*, 2010 OK CR 24, ¶¶ 1, 10–11, 245 P.3d at 1235, 1237. Because Smith had I.Q. scores of seventy-six (76) and seventy-nine (79), he could not be considered mentally retarded under the express language of § 701.10b(C) and his attorneys did not provide ineffective assistance by omitting

to raise this issue. *Id.*, 2010 OK CR 24, ¶¶ 10–11, 245 P.3d at 1237.

¶ 14 The procedures we adopted in *Pickens, Lambert,* and *Salazar* were replaced by the Legislature's enactment of 21 O.S.Supp. 2006, § 701.10b. This Court adopted the definition of mental retardation and the procedure for the determination of mental retardation claims under *Atkins*, only after the other branches of the government were unable to reach a meeting of the minds on the issue. *Murphy*, 2002 OK CR 32, ¶ 30, 54 P.3d at 567. This standard was a temporary resolution of the issue until the Legislature addressed it. *Id.*, 2002 OK CR 32, ¶ 31, 54 P.3d at 567–68. We specifically stated: "This standard shall be used at all future and pending capital trials, until such time as it may be replaced by a suitable legislative enactment." *Id.; see also Blonner v. State*, 2006 OK CR 1, ¶ 3, 127 P.3d 1135, 1139. Thus, from this Court's earliest announcement on the issue of mental retardation, we directed the practitioners and trial courts to follow § 701.10b, once enacted. *Murphy*, 2002 OK CR 32, ¶ 31, 54 P.3d at 567–68.

¶ 15 Citing to a portion of a footnote in this Court's Order Setting Forth Procedure Following Determination of Mental Retardation Issue, Petitioner argues that this Court has already pronounced that § 701.10b is not applicable to Petitioner's case. This Court made no such determination. The footnote in question determines that the appeal procedure set forth in " § 701.10b(H) is not applicable to the present case," i.e., the case then being considered by the Court.[2] It does not determine that § 701.10b is not applicable to Petitioner's case. As § 701.10b(H) establishes review of the issue of mental retardation during this Court's mandatory sentence review on direct appeal and this matter arose from a post-conviction proceeding, § 701.10b(H) is clearly inapplicable to the present case.[3]

---

2. In his brief, Petitioner omits that portion of the footnote that sets forth that:

   The Legislature has set forth the proper procedure for the determination of the issue of mental retardation. *Smith v. State*, 2010 OK CR 24, ¶ 3, 245 P.3d 1233, 1235 (finding 21 O.S.Supp.2006. § 701.10b governs the death penalty and mental retardation). Appeals of the determination of the issue of mental retar-

dation are governed by § 701.10b(H). However, § 701.10b(H) is not applicable in the present case....
(Order Setting Forth Procedure Following Determination of Mental Retardation Issue, at 2 n. 1).

3. Title 21 O.S.Supp.2006, § 701.10b does not set forth the procedure for a petitioner to obtain review of claims of error following a jury deter-

¶ 16 As our jurisprudence directed the trial courts to follow any new legislative enactment, once passed, the District Court's application of § 701.10b(C) to Petitioner's case was consistent with the procedures adopted in our mental retardation jurisprudence. Thus, the District Court properly complied with this Court's December 7, 2005 Opinion. This proposition is denied.

¶ 17 In his second proposition of error, Petitioner contends that the District Court violated his right to due process. Relying upon *Hicks v. Oklahoma*, 447 U.S. 343, 100 S.Ct. 2227, 65 L.Ed.2d 175 (1980), Petitioner argues that under this Court's jurisprudence he held a liberty interest that a jury would determine the issue of mental retardation. He asserts that the District Court violated his right to due process by refusing to give him a jury trial upon his mental retardation claim.

¶ 18 Petitioner did not raise this issue before the District Court. Thus, he has waived appellate review of the issue for all but plain error. *Pickens v. State*, 2005 OK CR 27, ¶ 40, 126 P.3d 612, 621 (applying plain error to alleged errors not raised before the trial court following determination of issue of mental retardation); *Simpson*, 1994 OK CR 40, ¶ 11, 876 P.2d at 695 (appellate review of allegations of error not preserved for review during district court proceedings by a proper objection are for plain error only).

To be entitled to relief under the plain error doctrine, [an appellant] must prove: 1) the existence of an actual error (i.e., deviation from a legal rule); 2) that the error is plain or obvious; and 3) that the error affected his substantial rights, meaning the error affected the outcome of the proceeding. *See Simpson v. State*, 1994 OK CR 40, ¶¶ 3, 11, 23, 876 P.2d 690, 694, 695, 698; 20 O.S.2001, § 3001.1. If these elements are met, this Court will correct plain error only if the error "seriously affect[s] the fairness, integrity or public reputation of the judicial proceedings" or otherwise represents a "miscarriage of jus-

tice." *Simpson*, 1994 OK CR 40, ¶ 30, 876 P.2d at 701 (*citing United States v. Olano*, 507 U.S. 725, 736, 113 S.Ct. 1770, 1779, 123 L.Ed.2d 508 (1993)); 20 O.S.2001, § 3001.1.

*Hogan v. State*, 2006 OK CR 19, ¶ 38, 139 P.3d 907, 923.

¶ 19 Under plain error review, we first determine whether Petitioner has shown an actual error. *Id.*, 2006 OK CR 27, ¶ 39, 139 P.3d at 923. Because Petitioner has not proven the existence of an actual error, we find that plain error did not occur.

¶ 20 "[S]tate law may create a liberty interest that cannot be denied without offending due process principles." *D.M.H. v. State*, 2006 OK CR 22, ¶ 8, 136 P.3d 1054, 1056 (*citing Clemons v. Mississippi*, 494 U.S. 738, 746–47, 110 S.Ct. 1441, 1447–48, 108 L.Ed.2d 725 (1990); *Ross v. Oklahoma*, 487 U.S. 81, 91, 108 S.Ct. 2273, 2279–80, 101 L.Ed.2d 80 (1988); *Hicks v. Oklahoma*, 447 U.S. 343, 346, 100 S.Ct. 2227, 2229, 65 L.Ed.2d 175 (1980)). Where a criminal defendant receives all that Oklahoma law allows him, there is no deprivation of due process. *Ross*, 487 U.S. at 91, 108 S.Ct. at 2279–80.

¶ 21 Turning to the particulars of the present case, Petitioner received all that Oklahoma law allows him. As discussed above, § 701.10b governs the death penalty and mental retardation in Oklahoma. *Smith*, 2010 OK CR 24, ¶ 3, 245 P.3d at 1235. Section 701.10b(E) establishes a capital murder defendant's right to a pre-trial evidentiary hearing and jury trial upon the issue of mental retardation. The defendant must first file a notice establishing "sufficient facts t[o] demonstrate a good-faith belief as to the mental retardation of the defendant." 21 O.S.Supp.2006, § 701.10b(D). A threshold requirement is an intelligence quotient of seventy (70) or below on an individually administered, scientifically recognized standardized intelligence quotient test administered by a licensed psychiatrist or psychologist. *Smith*, 2010 OK CR 24, ¶ 10, 245 P.3d at 1237 (*citing* 21 O.S.Supp.2006,

mination of the issue of mental retardation during post-conviction proceedings. Instead, the proper procedure is set forth in *Salazar v. State*, 2004 OK CR 4, ¶¶ 6–7, 84 P.3d 764, 766–67. 22 O.S.Supp.2004, § 1089(D)(5).

§ 701.10b).[4] "In determining the intelligence quotient, the standard measurement of error for the test administrated shall be taken into account." 21 O.S.Supp.2006, § 701.10b(C). "However, in no event shall a defendant who has received an intelligence quotient of seventy-six (76) or above on any individually administered, scientifically recognized, standardized intelligence quotient test administered by a licensed psychiatrist or psychologist, be considered mentally retarded and, thus, shall not be subject to any proceedings under this section." *Id.*

¶ 22 Petitioner had received intelligence quotients of eighty (80) from Dr. Bianco and eighty-two (82) from Dr. Hall on individually administered, scientifically recognized, standardized intelligence quotient tests. Petitioner relied upon these quotients to attempt to establish that he was mentally retarded. *Murphy*, 2003 OK CR 6, ¶¶ 16, 19, 66 P.3d at 458–59. Because of these quotients, Petitioner was unable to make the threshold showing required by § 701.10b. As Petitioner was unable to establish the threshold requirements set forth by § 701.10b, he was not entitled to a jury trial upon his claim of mental retardation. Plain error did not occur. This proposition is denied.

¶ 23 Petitioner asserts within this Proposition that he is being treated differently than similarly situated petitioners. As Petitioner has failed to set this out as a separate proposition of error with argument and authority as required by Rule 3.5, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2011), he has waived appellate review of the issue. *Harmon v. State*, 2011 OK CR 6, ¶ 90, 248 P.3d 918, 946; *Mayes v. State*, 1994 OK CR 44, ¶ 161, 887 P.2d 1288, 1321–22.

¶ 24 In his third proposition of error, Petitioner contends that the District Court's order terminating the proceedings violated his Constitutional rights as set forth in *Atkins v.* *Virginia*, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002). He asserts that the District Court's order now exposes a possibly mentally retarded individual to a capital sentence when the constitution clearly forbids it.

¶ 25 Petitioner did not raise this issue before the District Court. Thus, he has waived appellate review of the issue for all but plain error. *Pickens*, 2005 OK CR 27, ¶ 40, 126 P.3d at 621; *Simpson*, 1994 OK CR 40, ¶ 11, 876 P.2d at 695. We review his claim for plain error under the analysis set forth in *Simpson*. *Hogan*, 2006 OK CR 27, ¶ 38, 139 P.3d at 923. We first determine whether Petitioner has shown the existence of an actual error. *Id.*, 2006 OK CR 27, ¶ 39, 139 P.3d at 923.

¶ 26 In *Atkins*, the United States Supreme Court determined that there was a "national consensus"[5] against executing the mentally retarded. *Atkins*, 536 U.S. at 317, 122 S.Ct. at 2250. Based upon this "national consensus," *Atkins* held that the execution of mentally retarded criminals is prohibited by the Eighth Amendment as excessive punishment. *Smith*, 2010 OK CR 24, ¶ 3, 245 P.3d at 1235. Because there was no "national consensus" in determining which offenders are in fact retarded, *Atkins* did not set out an explicit definition for mental retardation. *Atkins*, 536 U.S. at 317, 122 S.Ct. at 2250. *Atkins* specifically noted that "[n]ot all people who claim to be mentally retarded will be so impaired as to fall within the range of mentally retarded offenders about whom there is a national consensus." *Id.* The determination of "who is and who is not mentally retarded for purposes of eligibility for a death sentence" was left to the States. *Murphy*, 2002 OK CR 32, ¶ 29, 54 P.3d at 566.

¶ 27 There is nothing unsettled about Petitioner's mental retardation claim. In Oklahoma, a capital murder defendant who has received an intelligence quotient of seventy-

---

4. The defendant must also demonstrate "evidence of significant limitations in adaptive functioning" and "evidence of manifestation before the age of eighteen (18) years." 21 O.S.Supp. 2006, § 701.10b(C).

5. I continue to maintain that it is not proper to adjudicate and interpret the Constitution, or stat-

utes based upon a quasi-popularity "consensus." *See Mitchell v. State*, 2010 OK CR 14, ¶ 79 n. 17, 235 P.3d 640, 658 n. 17; *Murphy v. State*, 2002 OK CR 32, ¶ 29 n. 16, 54 P.3d 556, 567 n. 16. However, I accede to the fact that the United States Supreme Court has followed this progression of thought and thus we must apply it here.

six (76) or above on any individually administered, scientifically recognized, standardized intelligence quotient test administered by a licensed psychiatrist or psychologist is not considered mentally retarded. 21 O.S.Supp. 2006, § 701.10b(C). In such circumstances, neither the pre-trial evidentiary hearing set forth in § 701.10b(E), nor a jury trial are held upon the issue. 21 O.S.Supp.2006, § 701.10b(C). Because the evidence at the hearing [6] held upon the State's motion to terminate mental retardation proceedings established that Petitioner had received two separate intelligence quotients in excess of seventy-six (76), Petitioner is not considered mentally retarded.

¶ 28 Petitioner has not proven the existence of an actual error. Thus, plain error did not occur. This proposition is denied.

¶ 29 In his fourth proposition of error, Petitioner contends that § 701.10b is unconstitutional and that application of the statute to his case violates the prohibition against ex *post facto* laws.

■■■■ ¶ 30 As Petitioner raised these challenges before the District Court he has preserved appellate review of these issues. *Wilkins v. State*, 1999 OK CR 27, ¶ 5, 985 P.2d 184, 185. Petitioner's challenge to the constitutionality of § 710.10b raises a question of statutory interpretation that we review *de novo*. *Smith*, 2007 OK CR 16, ¶ 40, 157 P.3d at 1169.

¶ 31 Petitioner claims that the provision within § 710.10b(C) that disqualifies any defendant from being considered mentally retarded for the purpose of a sentence of death if that individual has received an intelligence quotient of seventy-six (76) or above on any scientifically recognized intelligence quotient test is unconstitutional. He claims that the disqualification of defendants who have received an intelligence quotient of seventy-six (76) or above results in an arbitrary and capricious restriction of the determination of who is, in fact, mentally retarded contrary to *Woodson v. North Carolina*, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976). He also asserts that the disqualification provision is unconstitutional because it denies him his right to confrontation under the Sixth and Fourteenth Amendments to the United States Constitution.

■■■■ ¶ 32 We begin with the presumption that the statute is constitutional. *State v. Ballard*, 1994 OK CR 6, ¶ 3, 868 P.2d 738, 740.

> "Every presumption must be indulged in favor of the constitutionality of an act of the Legislature, and it is the duty of the courts, whenever possible, to harmonize acts of the Legislature with the Constitution." *State v. Pratt*, 1991 OK CR 95, ¶ 10, 816 P.2d 1149, 1151, *overruled on other grounds, Pitts v. State*, 2003 OK CR 21, 78 P.3d 551; *see also State v. Howerton*, 2002 OK CR 17, ¶ 16, 46 P.3d 154, 157. Statutes are to be liberally construed "with a view to effect their objects and to promote justice." 25 O.S.2001, § 29. The constitutionality of a statute will be upheld unless it is "clearly, palpably, and plainly inconsistent with fundamental law." *Howerton*, 2002 OK CR 17, ¶ 16, 46 P.3d at 157–158 *quoting Rivas v. Parkland Manor*, 2000 OK 68, ¶ 8, 12 P.3d 452, 456.

*State v. Hall*, 2008 OK CR 15, ¶ 23, 185 P.3d 397, 403. As he is the party attacking the constitutionality of the statute, Petitioner has the burden of proving that § 701.10b is unconstitutional. *Id.; Romano v. State*, 1993 OK CR 8, ¶ 66, 847 P.2d 368, 384.

■■■■ ¶ 33 "In *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), the United States Supreme Court held that the penalty of death may not be imposed under sentencing procedures that create a substantial risk that the punishment will be inflicted in an arbitrary and capricious manner." *Godfrey v. Georgia*, 446 U.S. 420, 427, 100 S.Ct. 1759, 1764, 64 L.Ed.2d 398 (1980). "This means that if a State wishes to authorize capital punishment it has a constitutional responsibility to tailor and apply its law in a manner that avoids the arbitrary and capricious infliction of the death penalty." *Id.*, 446 U.S. at 428, 100 S.Ct. at 1764; *see*

---

**6.** This was also the evidence that was presented to the jury in the trial that was conducted, wherein Petitioner was found not to be mentally retarded, before the trial court declared a mistrial after the fact.

*also Snow v. State,* 1994 OK CR 39, ¶ 27, 876 P.2d 291, 298.

¶ 34 The United States Supreme Court did not leave the States without guidance as to what was necessary to tailor and apply their law in a manner that avoids the arbitrary and capricious infliction of a sentence of death as it relates to mental retardation. *Atkins* imposed upon the States the same requirement of developing appropriate ways to enforce the constitutional restriction upon their execution of sentences as was done in *Ford v. Wainwright,* 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986) (plurality opinion), with regard to insanity. *Atkins,* 536 U.S. at 317, 122 S.Ct. at 2250 (quotations omitted).

¶ 35 In *Panetti v. Quarterman,* 551 U.S. 930, 127 S.Ct. 2842, 168 L.Ed.2d 662 (2007), the United States Supreme Court discussed what was required of the States under *Ford.* Once a prisoner seeking a stay of execution has made a substantial threshold showing of insanity he is entitled to the protections afforded by procedural due process, including a fair hearing. *Id.,* 551 U.S. at 948–49, 127 S.Ct. at 2855–56. A petitioner is only entitled to an opportunity to submit evidence and argument, including expert psychiatric evidence that may differ from the State's own psychiatric examination once he has made a substantial showing of insanity. *Id.,* 551 U.S. at 950, 127 S.Ct. at 2856.

¶ 36 Section 701.10b affords a defendant the procedural safeguards outlined in *Ford.* Oklahoma law creates a presumption that a capital defendant is not mentally retarded. *See McGregor v. State,* 1994 OK CR 71, ¶ 9, 885 P.2d 1366, 1376. Section 701.10b(C) is the "threshold requirement" that a defendant must meet to establish that he is entitled to a fair hearing upon his claim. *See Smith,* 2010 OK CR 24, ¶ 10, 245 P.3d at 1237. Once a defendant "demonstrates sufficient facts that demonstrate a good-faith belief as to [his] mental retardation," he is afforded both an evidentiary hearing and a trial upon his claim. 21 O.S.Supp.2006, § 701.10b.

¶ 37 The standard within § 701.10b(C) is consistent with *Atkins.* Although *Atkins* did not set forth a specific definition of mental retardation, *Atkins* noted that "[m]ild mental retardation is typically used to describe people with an IQ level of 50–55 to approximately 70." *Atkins,* 536 U.S. at 317, 309 n. 3, 122 S.Ct. at 2250, 2245 n. 3. (citation and quotations omitted). "[A]n IQ between 70 and 75 or lower, [ ] is typically considered the cutoff IQ score for the intellectual function prong of the mental retardation definition." *Id.,* 536 U.S. at 309 n. 5, 122 S.Ct. at 2245 n. 5 (citation omitted). Thus the possible disqualification of a defendant who had received an intelligence quotient of seventy-six (76) or above was contemplated by *Atkins.*

¶ 38 Petitioner did not make a threshold showing of mental retardation under § 701.10b(C). The evidence that he submitted both to this Court and the District Court indicated that he had received an intelligence quotient above seventy-six (76) on a scientifically recognized, standardized test. *Murphy,* 2003 OK CR 6, ¶¶ 16, 19, 66 P.3d at 458–59. As such, Petitioner was not entitled to the adversarial process associated with a jury trial.

¶ 39 We note that in the present case, the District Court afforded Petitioner a hearing upon the State's motion. Petitioner was permitted to submit evidence and argument upon the issue. The State relied upon the evidence from Petitioner's jury trial on the issue of mental retardation. Petitioner had the opportunity to confront and examine each of the witnesses at trial. This included clarifying and challenging the experts' opinions or methods. *See Ford,* 477 U.S. at 415, 106 S.Ct. at 2604 (concurring opinion of Marshall, Brennan, Blackmun, and Stevens, JJ.) [7]

¶ 40 Petitioner has not shown that § 701.10b denies him the protections afforded by procedural due process. As such, he has not proven that the statute is unconstitutional.

---

**7.** We commend Judge Bartheld for holding a hearing wherein both parties were permitted to submit evidence and argument, including expert evidence that may have differed from the State's own expert evidence. *See Ford v. Wainwright,* 477 U.S. 399, 427, 106 S.Ct. 2595, 2610, 91 L.Ed.2d 335 (1986) (plurality opinion).

**1294**

¶ 41 Petitioner further asserts that application of § 701.10b(C) to his case violates the prohibition against ex *post facto* laws. Petitioner argues that the statutory provision disqualifying any defendant who has received an intelligence quotient of seventy-six (76) or above disadvantages him because it increases the punishment for his offense, alters the rules of evidence and deprives him of a legal defense to the death penalty.

¶ 42 This Court interprets the ex *post facto* provisions in Article II, Section 15 of the Oklahoma Constitution consistent with federal jurisprudence. *Maghe v. State,* 1967 OK CR 98, ¶¶ 33–34, 429 P.2d 535, 540.

> A law is ex post facto if it (1) criminalizes an act after the act has been committed, (2) increases the severity of a crime after it has been committed; (3) increases the punishment for a crime after it has been committed; or (4) alters the rules of evidence, allowing conviction on less or different testimony than the law required at the time the act was committed. *See Carmell v. Texas,* 529 U.S. 513, 522–25, 120 S.Ct. 1620, 1627–29, 146 L.Ed.2d 577 (2000); *Calder v. Bull,* 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798).

*James v. State,* 2009 OK CR 8, ¶ 5, 204 P.3d 793, 795; *see also Applegate v. State,* 1995 OK CR 49, ¶ 7, 904 P.2d 130, 133–34 ("The ex *post facto* clause applies to four specific situations."). "The mere fact that a retroactively-applied change in evidentiary rules works to a defendant's disadvantage does not mean the law is ex *post facto.* The issue is whether the change affected the quantum of evidence necessary to support a conviction." *James,* 2009 OK CR 8, ¶ 6, 204 P.3d at 795 (*citing Carmell,* 529 U.S. at 546–47, 120 S.Ct. at 1640). "A law that abolishes an affirmative defense of justification or excuse contravenes [the *Ex Post Facto* Clause], because it expands the scope of a criminal prohibition after the act is done." *Collins v. Youngblood,* 497 U.S. 37, 49, 110 S.Ct. 2715, 2723, 111 L.Ed.2d 30 (1990).

¶ 43 We find that the District Court's application of § 701.10b(C) to Petitioner's case does not fall within any of the four specific situations. The challenged statutory provision does not criminalize an act after the act has been committed. Appellant's conviction rests upon, 21 O.S.Supp. 1996, § 701.7(A), the first degree murder statute that was in place at the time of his offense. *See Murphy,* 2002 OK CR 24, ¶ 1, 47 P.3d at 878.

¶ 44 Section 701.10b(C) does not increase the severity of the crime or increase the punishment for the crime after it has been committed. The punishment for first degree murder remains death, imprisonment for life without parole or imprisonment for life. 21 O.S.2011, § 701.9.

¶ 45 The challenged statutory provision neither changes the quantum of evidence necessary for a conviction nor expands the scope of criminal prohibition by abolishing an affirmative defense or excuse. Section 701.10b(C) does not enhance Petitioner's punishment or cause him to be eligible for a death sentence. Instead, the challenged statutory provision sets forth the threshold showing a defendant must show to be entitled to have his claim of mental retardation adjudicated. *Smith,* 2010 OK CR 24, ¶ 10, 245 P.3d at 1237.

¶ 46 As § 701.10b(C) does not fall within any of the delineated ex *post facto* prohibitions, the District Court properly applied it to Petitioner's case. Petitioner has not proven that § 701.10b is unconstitutional. This proposition is denied.

**DECISION**

¶ 47 The District Court's determination is factually substantiated. We *AFFIRM* the finding that Petitioner is not mentally retarded. Petitioner's second application for post-conviction relief is *DENIED.* Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch. 18, App. (2012), the **MANDATE** is **ORDERED** issued upon the delivery and filing of this decision.

A. JOHNSON, P.J. and LEWIS, V.P.J. and SMITH, J. concur.

C. JOHNSON, J. concur in results.