OSCN Found Document:ARGANBRIGHT v. STATE

 
 
 
 OSCN navigation


 
 Home

 
 Courts

 
 Court Dockets

 
 Legal Research

 
 Calendar

 
 Help
 





 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 

 
 
 
 ARGANBRIGHT v. STATE
2014 OK CR 5
Case Number: F-2012-1022
Decided: 05/20/2014
RONALD ARGANBRIGHT, Appellant, v. THE STATE OF OKLAHOMA, Appellee.
Cite as: 2014 OK CR 5, __ __
OPINION

LUMPKIN, JUDGE:

¶1 Appellant, Ronald Arganbright, was tried in a non-jury trial before the Honorable Doug Haught, District Judge, District Court of Beckham County, Case No. CF-2011-126. He was convicted of Lewd or Indecent Acts to a Child under 16 (Count I) (21 O.S.Supp.2007, § 1123(A)(2)), and Soliciting Sexual Conduct or Communication with Minor by Use of Technology (Count II) (21 O.S.Supp.2007, § 1040.13a).[1] In Count I, the trial court sentenced Appellant to imprisonment for five (5) years with all but three (3) years suspended and assessed Appellant with court costs and a Victim's Compensation Assessment in the amount of $5,202.73.[2] As to Count II, the trial court sentenced Appellant to imprisonment for five (5) years with all but three (3) years suspended and assessed Appellant with court costs and a Victim's Compensation Assessment in the amount of $50.00. The trial court ordered the sentences to run concurrently. It is from this judgment and sentence that Appellant appeals.

¶2 Appellant raises the following proposition of error in support of this appeal:

I. The statute under which Appellant was convicted in Count II is unconstitutional as applied to Appellant's sexual text messages to a sixteen-year-old over the age of consent with whom he was in a relationship.

¶3 After thorough consideration of this proposition and the entire record before us on appeal including the original record, transcripts and briefs of the parties, we have determined that neither reversal nor modification of the judgment or sentence is warranted under the law and the evidence.

FACTS

¶4 Appellant was employed as a Trooper with the Oklahoma Highway Patrol. He was forty-four years old and married. M.C. was fifteen years old. She attended school with Appellant's son. Appellant entered into an illicit relationship with M.C. that culminated in sexual intercourse in Appellant's patrol car.

¶5 Beginning in October of 2009, Appellant communicated with M.C. through electronic devices and social media. Appellant "friended" M.C. on Facebook and conversed with her by instant messaging. He also texted messages to her cell phone.

¶6 Sometime between the middle of December of 2009 and early January 2010, Appellant started telling M.C. that he loved her. Appellant persuaded M.C. to meet him in person. He picked M.C. up from her home one night when her parents were out of town. Appellant took her out to an area near Thrills Hills in his pickup and parked. Appellant kissed M.C. and held her hand. He placed his hand under her shirt and bra and touched her breasts. M.C. repeatedly told Appellant "no" when he placed his fingers in the waist of her pants. Eventually, Appellant took M.C. home.

¶7 Thereafter, Appellant continued to text message and telephone M.C. He told her that he wanted to marry her and stated that he would leave his wife and kids. In February of 2010, Appellant persuaded M.C. to meet him at the city park. M.C. arrived at the park with the assistance of a girlfriend who was old enough to drive. Appellant and M.C. met on three or four occasions and engaged in sexual activity. The meetings took place at night when there were no other vehicles in the park.

¶8 After M.C. turned sixteen and began to drive, Appellant persuaded her to meet him on numerous occasions. Over the course of several months, Appellant coaxed M.C. to engage in escalating sex acts with him. M.C. was reluctant to engage in the sexual activities. Appellant convinced her to perform the acts by referencing the text messages they had exchanged.

¶9 Appellant also gave M.C. several gifts. He gave her a necklace, a sweat shirt, and eventually a ring. He promised her that they were "together for the long haul, and were going to get married." (Tr. 12).

¶10 At the end of June of 2010, Appellant sent M.C. texts that were intended to encourage her to engage in sexual intercourse with him. Appellant sent M.C. multiple messages about trying to meet and their feelings towards each other. Shortly after midnight on June 28th, Appellant sent M.C. a message which stated that they would be having sex already if he was able to pick her up.

¶11 On July 12, 2010, Appellant engaged in sexual intercourse with M.C. in his patrol car. M.C. described the intercourse as "mutual; however, she was reluctant." (Tr. 11). M.C. related that Appellant wanted to have sex but she did not want to have sex because she felt it was wrong. M.C. explained that she gave in because Appellant stated he did not understand why she would not want to if she loved him. Thereafter, Appellant engaged in sexual intercourse with M.C. in his patrol car once a week until November 15, 2010.

¶12 Appellant told M.C. that if anyone found out about their relationship that she was supposed to say that she was the one that initiated the sexual conduct. M.C. informed her friends that she had lost her virginity to Appellant. Several students reported the matter to the school superintendent who, in turn, notified the Oklahoma Highway Patrol.

¶13 The Oklahoma Highway Patrol Investigations Division investigated Appellant's relationship with M.C. and interviewed Appellant. At first, Appellant denied that his relationship with M.C. was anything more than a friendship but conceded that he had been texting her for more than one year. Eventually, Appellant admitted that he had engaged in the sex acts that M.C. had described. He agreed that the acts began before M.C.'s sixteenth birthday. He related that after July of 2010, he had engaged in sexual intercourse with M.C. in his patrol car. This occurred once a week in various locations around town.

DISCUSSION

¶14 In his sole challenge, Appellant contends that 21 O.S.Supp.2007, § 1040.13a is unconstitutional as applied to him. He asserts that the statutory provision violates the Free Speech Clause of the First and Fourteenth Amendments to the United States Constitution.

¶15 It is the Legislature's role to establish and maintain the plumb line of minimally allowed conduct in our ordered society. See Hogan v. State, 2006 OK CR 19, ¶ 82, 139 P.3d 907, 934 (policy matters fall within the purview of the legislature and not the courts). As there are no common law crimes in this State, this Court is bound by the language the Legislature has placed in our statutes defining crimes. Salyers v. State, 1988 OK CR 88, ¶ 7, 755 P.2d 97, 100; Hisel v. State, 1953 OK CR 163, 264 P.2d 375, 385; 21 O.S.2011, § 2. We defer to our sister branch of the government and indulge every presumption in favor of the constitutionality of an act of the Legislature. State ex. rel. Mashburn v. Stice, 2012 OK CR 14, ¶ 12, 288 P.3d 247, 250; Murphy v. State, 2012 OK CR 8, ¶ 32, 281 P.3d 1283, 1292. Thus, the party attacking the constitutionality of a statute has the burden of proving the statute is unconstitutional. Murphy, 2012 OK CR 8, ¶ 32, 281 P.3d at 1292; Romano v. State, 1993 OK CR 8, ¶ 66, 847 P.2d 368, 384.

¶16 Appellant contends that there is no compelling state interest that justifies the content based restriction on speech set forth in § 1040.13a(A). "[A]s a general matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." Ashcroft v. ACLU, 535 U.S. 564, 573, 122 S.Ct. 1700, 1707, 152 L.Ed.2d 771 (2002) (quotations and citations omitted). A content based restriction is one that regulates speech based upon either the content or subject matter of the speech. Consol. Edison Co. of N.Y., Inc., v. Pub. Serv. Comm'n of N.Y., 447 U.S. 530, 536, 100 S.Ct. 2326, 2332, 65 L.Ed.2d 319 (1980). Regulations that focus on the direct impact of speech on its audience are content based. See Boos v. Barry, 485 U.S. 312, 321, 108 S.Ct. 1157, 1163, 99 L.Ed.2d 333 (1988). Conversely, a content neutral restriction is one that is not based upon either the content or subject matter of the speech. Ward v. Rock Against Racism, 491 U.S. 781, 791, 109 S.Ct. 2746, 2754, 105 L.Ed.2d 661 (1989); Edison, 447 U.S. at 536, 100 S.Ct. at 2332. Content neutral speech regulations are those that are justified without reference to the content of the regulated speech. Id.; City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 48, 106 S.Ct. 925, 929, 89 L.Ed.2d 29 (1986).

¶17 This Court has not previously had the opportunity to construe § 1040.13a. The rules of statutory construction are well settled. State ex rel. Mashburn, 2012 OK CR 14, ¶ 11, 288 P.3d at 250.

Statutes are to be construed to determine the intent of the Legislature, reconciling provisions, rendering them consistent and giving intelligent effect to each. Lozoya v. State, 1996 OK CR 55, ¶ 17, 932 P.2d 22, 28; State v. Ramsey, 1993 OK CR 54, ¶ 7, 868 P.2d 709, 711. It is also well established that statutes are to be construed according to the plain and ordinary meaning of their language. Wallace v. State, 1997 OK CR 18, ¶ 4, 935 P.2d 366, 369-370; Virgin v. State, 1990 OK CR 27, ¶ 7, 792 P.2d 1186, 1188. We also recognize that the fundamental principle of statutory construction is to ascertain and give effect to the intention of the Legislature as expressed in the statute. Wallace v. State, 1996 OK CR 8, ¶ 4, 910 P.2d 1084, 1086; Thomas v. State, 1965 OK CR 70, ¶ 4, 404 P.2d 71, 73.

State v. Young, 1999 OK CR 14, ¶ 27, 989 P.2d 949, 955. It is the duty of the Court, whenever possible, to harmonize acts of the Legislature with the United States Constitution and the Constitution of the State of Oklahoma. Murphy, 2012 OK CR 8, ¶ 32, 281 P.3d at 1292; State v. Howerton, 2002 OK CR 17, ¶ 16, 46 P.3d 154, 157. The Legislature is presumed to have those authorities in mind when forming the language of statutes. State v. Hunter, 1990 OK CR 13, ¶ 4, 787 P.2d 864, 865.

¶18 It is apparent from the plain language of § 1040.13a that the Legislature intended to restrict the use of electronic technology within the State and maintain the plumb line of minimally allowed conduct in our ordered society. The plain language of the statute provides:

It is unlawful for any person to facilitate, encourage, offer or solicit sexual conduct with a minor, or other individual the person believes to be a minor, by use of any technology, or to engage in any communication for sexual or prurient interest with any minor, or other individual the person believes to be a minor, by use of any technology.

21 O.S.Supp.2007, § 1040.13a(A).[3]

¶19 This statutory provision causes it to be unlawful for any person to communicate with a minor through the use of electronic technology for the purposes of facilitating, encouraging, offering, or soliciting sexual conduct or communicating sexual or prurient interest with any minor, or other individual the person believes to be a minor. Therefore, we find that the statute regulates speech based upon its content or subject matter.

¶20 Content based regulations are considered presumptively invalid and subject to strict scrutiny. Los Angeles v. Alameda Books., Inc., 535 U.S. 425, 434, 122 S.Ct. 1728, 1733, 152 L.Ed.2d 670 (2002). "The Government may, however, regulate the content of constitutionally protected speech in order to promote a compelling interest if it chooses the least restrictive means to further the articulated interest." Sable Comm'n of California, Inc., v. FCC, 492 U.S. 115, 126, 109 S.Ct. 2829, 2836, 106 L.Ed.2d 93 (1989).

¶21 The State argues that § 1040.13a(A) furthers the compelling State interest of protecting minors from luring and abduction, sexual exploitation, child pornography, sexual abuse, human trafficking and child prostitution. We agree. The plain language of § 1040.13a reveals that the Legislature intended to prevent individuals from using electronic technology to sexually exploit or sexually abuse minors.

¶22 We further find that the Legislature's placement of the statute within the "Oklahoma Law on Obscenity and Child Pornography" act is also informative as to its intended purpose. 21 O.S.2011, § 1040.11. The Legislature placed § 1040.13a within Chapter 39 of Title 21. This chapter contains the prohibitions against the procurement or manufacture of child pornography (21 O.S.2011, § 1021.2); child prostitution (21 O.S.Supp.2013, § 1029(B)); and the commercial distribution of child pornography (21 O.S.2011, § 1040.13). These are other well-known prohibitions intended to prevent the sexual exploitation of minors.

¶23 When the Legislature adopted the language within § 1040.13a(A), it also directed the Oklahoma State Bureau of Investigation to establish an "Internet Crimes Against Children Unit." 2006 Okla. Sess. Laws Ch. 183, § 2. The Legislature tasked the Internet Crimes Against Children Unit with "the primary purpose of investigating Internet crimes committed against children, including, but not limited to, offenses related to child pornography and solicitation of minors for pornography, prostitution or sex-related offenses." 74 O.S.Supp.2006, § 151.1. This further evinces that § 1040.13a was aimed to prevent the use of technology to sexually exploit or sexually abuse minors.

¶24 The inherent rule within our society is that minors are to be protected. Prince v. Massachusetts, 321 U.S. 158, 168, 64 S.Ct. 438, 443, 88 L.Ed. 645 (1944) ("A democratic society rests, for its continuance, upon the healthy, well-rounded growth of young people into full maturity as citizens."). "It is evident beyond the need for elaboration that a State's interest in 'safeguarding the physical and psychological well-being of a minor' is 'compelling.'" New York v. Ferber, 458 U.S. 747, 756-57, 102 S.Ct. 3348, 3354-55, 73 L.ED.2d 1113 (1982), (quoting Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 607, 102 S.Ct. 2613, 2620, 73 L.Ed.2d 248 (1982)). "The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance." Id., 458 U.S. at 757, 102 S.Ct. at 3355.

¶25 We note that no other aspect of modern life has the "unique attributes" of electronic technology. See Sable, 492 U.S. at 127-28, 109 S.Ct. at 2837. It is "'uniquely pervasive' . . . and is 'uniquely accessible to children, even those too young to read.'" See Id.; Pacifica, 438 U.S. at 748-749, 98 S.Ct., at 3039-40. Today's youth are a "captive audience" to electronic technology as they have "no meaningful opportunity to avoid [it]." See Id. We live in a global, information-based economy and the workplace is increasingly becoming technology driven. Gregory R. Watchman and Daniel P. Westman, The Millennial Generations Wireless Work Styles; Cutting Edge or Slippery Slope, ACC Docket, 78, 80 (April, 2009). The use of electronic technology is a necessity for young people. Katherine Ng, Digital Dilemmas: Responding to Cyberbullying in Nova Scotia, Education and Law Journal, 63, 63 (December, 2012). It is integral to the educational process. Id., at 65. Adolescents also consider it to be a lifeline to their social network. Id., at 90. Excluding computer use for schoolwork, young people use electronic technology an average of 7:38 hours a day. Mary Graw Leary, Reasonable Expectations of Privacy for Youth in a Digital Age, 80 Miss. L.J. 1035, 1041 (2011). The expansion in the use of electronic technology has created new risks to children's safety. Mary Graw Leary, Development in the Law: Technology and Social Media in the 21st Century: Solutions for Minimizing the Risk to Children, 27 J. Contemp. Health L. & Pol'y 325, 326 (Spring, 2011).

¶26 Appellant asserts that this interest was not present within the circumstances of his case. He asserts both that he is not a sexual predator and that his relationship with M.C. was consensual. He argues that M.C. was not a minor because she had reached the "age of consent" prior to his sending the text messages for which he was charged in the present case.[4] We are not persuaded by his argument.

¶27 Appellant confuses the "age of majority" with the "age of consent." The "age of majority" is the age at which an individual is recognized as an adult. It is the age "at which a person attains full legal rights, esp. civil and political rights such as the right to vote." Black's law dictionary 66 (Eighth Edition 2004). The "age of majority" is separate and distinct from the "age of criminal responsibility," the "age of reason," and the "age of consent." Id. In contrast, the "age of consent" is the age "at which a person is legally capable of agreeing . . . to sexual intercourse." Id.

¶28 The "age of consent" in Oklahoma is statutorily defined. In the absence of mental illness or any other unsoundness of mind, the Legislature has set the age of consent for sexual activity at 16 years of age. 21 O.S.2011, § 1111(A)(1) (Rape is an act of sexual intercourse . . . [w]here the victim is under sixteen (16) years of age."); 21 O.S.Supp.2013, § 1123 ("Lewd or Indecent Proposals or Acts to Child Under 16"); 21 O.S.2011, § 888 (defining forcible sodomy as: "[s]odomy committed by a person over eighteen (18) years of age upon a person under sixteen (16) years of age.").

¶29 There is no question that a 16 year-old remains a minor in the State of Oklahoma. In Oklahoma, the age of majority has been set at the age of 18 years by the Constitution. An individual must have attained the age of 18 years to vote. Okla. Const. Art. 3, § 1. The Legislature has also statutorily established the "age of majority" as 18 years of age. The disability and prohibitions placed on minors entering into contracts is removed at 18 years of age. 15 O.S.2011, §§ 11-21. At 18 years of age, an individual may legally enter into marriage without the consent of a parent or authorization of court order. 43 O.S.2011, § 3. The Legislature has explicitly defined a "minor" as any person under the age of eighteen (18) years. 21 O.S.2011, §§ 1040.75(1), 1024.1; 43 O.S.2011, § 5-502(1). Thus, 16 year-old and 17 year-old youths are considered minors under Oklahoma law.

¶30 The Legislature's act of establishing the "age of consent" at 16 years of age does not detract from the compelling State interest evinced within § 1040.13a. It was within the Legislature's authority to establish the "age of consent" for sexual activity at 16 years of age but still seek to discourage 16 year-old and 17 year-old youth from engaging in sexual activity. Salyers, 1988 OK CR 88, ¶ 7, 755 P.2d at 100 ("The matter of defining crimes and fixing the degrees of punishment is one of legislative power."); see also Missouri v. Hunter, 459 U.S. 359, 368, 103 S.Ct. 673, 679, 74 L.Ed.2d 535 (1983). The physical and psychological effects of teenage sexual activity are well known. "[T]eenage pregnancies . . . have significant social, medical, and economic consequences for both the mother and her child, and the State." Michael M. v. Superior Court, 450 U.S. 464, 470, 101 S.Ct. 1200, 1205, 67 L.Ed.2d 437 (1981). The incidence of sexually transmitted disease within adolescents is well documented and constitutes a burden to the individual, the U.S. health care system, and the Nation as a whole.[5]

¶31 We further note that Oklahoma is not alone in recognizing this compelling interest. Regardless of the statutory age of consent in the various states, the federal government also defines any person under the age of eighteen years a "minor" for the purposes of preventing the sexual exploitation and abuse of children. 18 U.S.C.A. § 2256 (2008).

¶32 The circumstances of Appellant's case evince the compelling State governmental interest that § 1040.13a serves. Appellant used technology to sexually exploit the teenage victim in the present case. M.C. was fifteen years old. Appellant used electronic technology to facilitate sexual conduct with her, lured her from her parent's home, and engaged in sexual conduct with her. This continued up to M.C.'s sixteenth birthday. After M.C. had attained 16 years of age, Appellant communicated with M.C. through the use of technology to encourage her to have sexual intercourse with him. At Sentencing the trial court received evidence concerning the impact of Appellant's offenses. M.C. had been ostracized by many of her classmates. However, she was glad that her friends had reported the circumstances because she needed to be brought out of the situation. M.C. explained that the relationship was not mutual. She admitted that she had told Appellant she would kiss him and engage in sexual conduct with him in the text messages but explained that the texts did not seem real. When she was face to face with Appellant, she was scared, refused to engage in the acts, and even "pushed" Appellant away. (Sent. Tr. 31-32). Appellant used her statements from the texts to "pressure[]" her to engage in the acts. (Sent. Tr. 41). She tried to break off the relationship several times but Appellant flooded her friends with texts and phone calls bugging them about her. Appellant used the fact that he was a law enforcement officer to get to M.C. He pulled over one of her friends to convince her to get back with him. M.C. explained that she did not believe that she would have engaged in the sexual conduct with Appellant but for their age difference, the fact that Appellant was a law enforcement officer, and the texting. M.C. became withdrawn and belligerent. She felt self-conscious, lost confidence, and no longer felt safe. Accordingly, we find that § 1040.13a promotes a compelling State interest as applied to Appellant.

¶33 As compelling as the State's interest of protecting minors is in the present case, the statutory provision must still be narrowly drawn to serve those interests if the provisions is to withstand constitutional scrutiny. Sable, 492 U.S. at 126-27, 109 S.Ct. at 2836-37. The statute must be carefully tailored to achieve those ends without unnecessarily interfering with First Amendment freedoms. Id., 492 U.S. at 126, 109 S.Ct. at 2836-37. This standard necessarily disfavors a blanket ban or complete prohibition. United States v. Playboy Entertainment Group, 529 U.S. 803, 813-14, 120 S.Ct. 1878, 1886-87, 146 L.Ed.2d 865 (2000); Sable, 492 U.S. at 127-28, 109 S.Ct. at 2837-38 (holding total ban on indecent "dial-a-porn" telephone communications not narrowly drawn to serve the Government's compelling interest in protecting children); Bolger v. Youngs Drug Products Corp., 463 U.S. 60, 75, 103 S.Ct. 2875, 2885, 77 L.Ed.2d 469 (1983) (rejecting blanket ban on the mailing of contraceptive advertisements). "If a less restrictive alternative would serve the Government's purpose, the legislature must use that alternative." Playboy, 529 U.S. 803, 813, 120 S.Ct. at 1886, (citing Reno v. ACLU, 521 U.S. 844, 874, 117 S.Ct. 2329, 2346, 138 L.Ed.2d 874 (1997) ("[B]urden on adult speech is unacceptable if less restrictive alternatives would be at least as effective in achieving the legitimate purpose that the statute was enacted to serve.")). Legislation that reduces the adult population's freedom of expression to only what is fit for children is not reasonably restricted. Sable, 492 U.S. at 128, 109 S.Ct. at 2837; Bolger, 463 U.S. at 73, 103 S.Ct. at 2883 ("The level of discourse reaching a mailbox simply cannot be limited to that which would be suitable for a sandbox."); Butler v. Michigan, 352 U.S. 380, 384-85, 77 S.Ct. 524, 525, 1 L.Ed.2d 412 (1957).

¶34 In contrast, the Supreme Court has upheld limited or narrow restrictions on protected speech involving minors. In Ginsberg v. New York, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968), the Supreme Court found that a prohibition against sales of sex-related materials to minors under the age of 17 was constitutional. Id., at 636-37, 639-40, 88 S.Ct at 1279-81. In FCC v. Pacifica Foundation, 438 U.S. 726, 98 S.Ct. 3026, 57 L.Ed.2d 1073 (1978), the Supreme Court determined that an FCC rule that was not intended to place an absolute prohibition on the broadcast of indecent language (George Carlin's "Filthy Words" monologue), but rather sought to channel it to times of day when children most likely would not be exposed to it, did not violate the First Amendment. Id., 438 U.S. at 733, 98 S.Ct. at 3032 (quotations omitted); Sable, 492 U.S. at 128, 109 S.Ct. at 2837.

¶35 The State argues in the present case that § 1040.13a is narrowly tailored to the compelling interest it is intended to protect as it is the least restrictive means to protect minors from individuals using technology to sexually exploit or sexually abuse them. Appellant does not dispute this contention. He only argues that there is no compelling State interest as applied to him. We are convinced by the State's argument. See Playboy, 529 U.S. at 816, 120 S.Ct. at 1888 ("When a plausible, less restrictive alternative is offered to a content-based speech restriction, it is the Government's obligation to prove that the alternative will be ineffective to achieve its goals.").

¶36 Section 1040.13a is not a blanket ban or complete prohibition of speech. Instead, the statutory provision is limited or narrow. The statute does not prohibit all communications with minors concerning indecent thoughts. Instead, the statute is limited to communications with minors that are likely to result in sexual exploitation or sexual abuse, i.e., those that "facilitate, encourage, offer, or solicit sexual conduct with a minor" or express "sexual or prurient interest with any minor." 21 O.S.Supp.2007, § 1040.13a. As such, the statute leaves a large universe of speech beyond its reach.

¶37 Importantly, § 1040.13a does not reduce the adult population to only what is fit for children. Adults or individuals over the "age of majority" within the state are lawfully permitted to contact each other by technological means and facilitate, encourage, offer or solicit sexual conduct and engage in communications for sexual or prurient interest.

¶38 The Legislature appropriately limited the prohibition within § 1040.13a to the use of electronic technology to "facilitate, encourage, offer, or solicit sexual conduct with a minor" or express "sexual or prurient interest with any minor." Therefore, we find that § 1040.13a was narrowly tailored to promote the State's compelling interest of preventing individuals from using technology to sexually exploit or sexually abuse minors.

¶39 In the same sentence in which he first asserts that § 1040.13a violates the United States Constitution, Appellant also asserts that the statutory provision violates Article 2, Section 22 of the Oklahoma Constitution as applied to him. However, Appellant has not provided any argument or authority to support this claim. Therefore, we find that Appellant has waived appellate review of this claim pursuant to Rule 3.5(A)(5), Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2014); Malone v. State, 2013 OK CR 1, ¶ 59, 293 P.3d 198, 215; Harmon v. State, 2011 OK CR 6, ¶ 90, 248 P.3d 918, 946.

¶40 We find that § 1040.13a did not unnecessarily interfere with Appellant's First Amendment freedoms and thus conclude that § 1040.13a was not unconstitutionally applied to Appellant.

DECISION

¶41 The judgment and sentence is AFFIRMED. Pursuant to Rule 3.15, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2014), the MANDATE is ORDERED issued upon the delivery and filing of this decision.

AN APPEAL FROM THE DISTRICT COURT OF BECKHAM COUNTY
THE HONORABLE DOUG HAUGHT, DISTRICT JUDGE

 

APPEARANCES AT TRIAL
 APPEARANCES ON APPEAL
 
 JOSH WELCH
 OGLE & WELCH
 101 PARK AVENUE, STE 600
 COUNSEL FOR DEFENDANT
 
 
 R. SCOTT ADAMS
 401 N. HUDSON, STE. 100
 OKLAHOMA CITY, OK 73102

 LAURA K. DESKIN
 101 PARK AVENUE, STE 300
 OKLAHOMA CITY, OK 73102
 COUNSEL FOR APPELLANT
 
 
 ANGELA MARSEE
 ASSISTANT DISTRICT ATTORNEY
 302 E. MAIN STREET
 SAYRE, OK 73662
 COUNSEL FOR THE STATE
 
 
 E. SCOTT PRUITT
 ATTORNEY GENERAL OF OKLAHOMA
 TIMOTHY J. DOWNING
 ASSISTANT ATTORNEY GENERAL
 313 N.E. 21ST ST.
 OKLAHOMA CITY, OK 73105
 COUNSEL FOR THE STATE
 
 OPINION BY: LUMPKIN, J.
LEWIS, P.J.: CONCUR
SMITH, V.P.J.: SPECIALLY CONCUR
C. JOHNSON, J.: DISSENT
A. JOHNSON, J.: SPECIALLY CONCUR

FOOTNOTES

[1] The State dismissed Count III, Seduction of An Unmarried Female (21 O.S.2001, § 1120) prior to trial in consideration of Appellant's waiver of jury trial.

[2] Any person convicted of lewd molestation of a child as provided for in 21 O.S.Supp.2009, § 1123 shall be required to serve not less than eighty-five percent of any sentence of imprisonment imposed prior to becoming eligible for consideration for parole. 21 O.S.Supp.2009, § 13.1(18).

[3] "'[B]y use of any technology' means the use of any telephone or cell phone, computer disk (CD), digital video disk (DVD), recording or sound device, CD-ROM, VHS, computer, computer network or system, Internet or World Wide Web address including any blog site or personal web address, e-mail address, Internet Protocol address (IP), text messaging or paging device, any video, audio, photographic or camera device of any computer, computer network or system, cell phone, any other electrical, electronic, computer or mechanical device, or any other device capable of any transmission of any written or text message, audio or sound message, photographic, video, movie, digital or computer-generated image, or any other communication of any kind by use of an electronic device." 21 O.S.2011, § 1040.13a(A).

[4] Although the evidence revealed that Appellant had texted M.C. on numerous occasions to facilitate sexual conduct with her, the State chose to charge Appellant only for those texts that occurred between the 27th and 30th of June in 2010. M.C. had attained 16 years of age by that date.

[5] Sexually Transmitted Disease Surveillance Report, Reported STDs in the United States, U.S. Centers for Disease Control and Prevention, January 2014, http://www.cdc.gov/nchhstp/newsroom/docs/STD-Trends-508.pdf; Sexually Transmitted Disease Surveillance Report, Incidence, Prevalence, and Cost of Sexually Transmitted Infections in the United States, U.S. Centers for Disease Control and Prevention, February 2013, http://www.cdc.gov/std/stats/STI-Estimates-Fact-Sheet-Feb-2013.pdf.

 

SMITH, V.P.J., SPECIALLY CONCURRING:

¶1 I specially concur to clarify the constitutional standard applied in this case. The United States Supreme Court has recognized that sexual expression which is indecent but not obscene is protected by the First Amendment. Sable Communications of California, Inc., v. F.C.C., 492 U.S. 115, 126, 109 S.Ct. 2829, 2836, 106 L.Ed.2d 93 (1989). Because Section 1040.13a of Title 21 is a content-based restriction on such protected speech, we must determine whether its provisions withstand strict scrutiny. Under this standard, the State may "regulate the content of constitutionally protected speech in order to promote a compelling interest if it chooses the least restrictive means to further the articulated interest." Id. Section 1040.13a passes constitutional muster under this stringent standard.

¶2 The need to protect the physical and psychological well-being of a minor is unquestionably a compelling State interest. New York v. Ferber, 458 U.S. 747, 756-57, 102 S.Ct. 3348, 3354, 73 L.Ed.2d 1113 (1982). While parents may be able to monitor the places their children go and with whom they socialize, parents cannot control others who seek to send indecent communications to their children. The content based restriction in Section 1040.13a is narrowly tailored to guard against the insidious way third persons can reach minors in even the most private places and in a manner that parents cannot monitor. It achieves this interest without unnecessary interference with First Amendment freedoms.

¶3 The Legislature's failure to include those law enforcement officers who use their apparent authority to accomplish sexual intercourse with a victim within the class of those governed by Section 1111 of Title 21 caused issues to arise in this case. Recognizing the unique power and control governmental actors exercise over those under their custody or supervision, the Legislature provided that the crime of Rape may be committed "[w]here the victim is under the legal custody or supervision of a state agency, a federal agency, a county, a municipality or a political subdivision and engages in sexual intercourse with a state, federal, county, municipal or political subdivision employee or an employee of a contractor of the state, the federal government, a county, a municipality or a political subdivision that exercises authority over the victim." 21 O.S.2011, § 1111(7).

¶4 Under the plain language of Section 1111(7), it applies only where the victim is in legal custody or supervision. However, the danger for an abuse of power by a member of law enforcement is not lessened simply because the victim is not in legal custody. Citizens routinely submit to law enforcement officers by virtue of the apparent authority they exercise under many circumstances which do not involve legal custody or supervision. No less could be expected of a minor between the ages of sixteen and eighteen. The facts of the present case indicate that Arganbright used his unique position of power and control as a police officer to gain access to and pressure the minor victim into engaging in sexual conduct. Yet because Section 1111(7) does not encompass a police officer's use of his or her apparent authority to engage in sexual intercourse with one who is not in legal custody, Arganbright could not be charged with Rape. The provisions of Section 1111 should, therefore, be amended to specifically proscribe sexual intercourse by a member of law enforcement with a victim who is between the ages of sixteen and eighteen.

¶5 I am authorized to state that Judge Arlene Johnson joins this special concurrence.

C. JOHNSON, JUDGE, DISSENT:

¶1 A content-based restriction on speech is presumptively invalid and will not survive strict scrutiny unless the State can show that the regulation promotes a compelling state interest and that it chose the least restrictive means to further the articulated interest. Sable Communications v. Federal Communications Commn., 492 U.S. 115, 126, 109 S.Ct. 2829, 2837, 106 L.Ed.2d 93 (1961)("It is not enough to show that the Government's ends are compelling; the means must be carefully tailored to achieve those ends."). Both Arganbright and the State agree that 21 O.S.Supp.2007, § 1040.13a(A) was enacted in furtherance of a compelling state interest. With this conclusion I do not disagree. The next inquiry, of course, is whether section 1040.13a(A) is narrowly tailored to the interest it is intended to protect. This is where we ask whether the statute prohibits only the speech necessary to achieve the State's interest and this is where I disagree with the analysis proffered by the majority opinion.

¶2 As noted by the majority, the compelling state interest Section 1040.13a(A) endeavors to promote is to "protect[] minors from luring and abduction, sexual exploitation, child pornography, sexual abuse, human trafficking and child prostitution" and to "prevent individuals from using electronic technology to sexually exploit or sexually abuse minors."[1] This statute, in short, seeks to prevent individuals from using electronic technology to facilitate the commission of sex crimes against minors. This compelling state interest is not promoted where the statute operates to punish an individual for using text messages to communicate about lawful sexual activity. I find that Section 1040.13a(A) is not narrowly tailored to the interest it is intended to protect.[2]

¶3 I agree wholeheartedly with the majority that the facts of this case are particularly disturbing. Mr. Arganbright, a law enforcement officer and a parent who attended school functions, befriended and "groomed" a fifteen year old girl and after she turned sixteen, reaching the age of consent, he used text messaging to encourage her to become sexually active with him. If he had sent the offending text messages to her when she was fifteen and below the age of consent this Court would not be addressing the issue before us today - he would have been encouraging an illegal act and such is not protected speech.[3] See U.S. v. Williams, 553 U.S. 285, 297, 128 S.Ct. 1830, 1841, 170 L.Ed.2d 650 (2008)("Offers to engage in illegal transactions are categorically excluded from First Amendment protection."); United States v. Bailey, 228 F.3d 637, 639 (6th Cir. 2000)(the inducement of minors to engage in illegal sexual activity enjoys no First Amendment protection). If the Oklahoma Legislature wants to punish individuals for encouraging or soliciting sixteen and seventeen year old youth to participate in sexual activity, it may simply change the age of consent to eighteen years of age.[4] But that is not currently the law in Oklahoma. Under the circumstances of this case, where the provisions of a statute designed to prevent individuals from using electronic technology to facilitate the commission of sex crimes against minors operated to punish Arganbright for communicating with a minor who had reached the age of consent about acts, which although immoral and indecent, were both consensual and lawful, I find that the statute was not narrowly tailored to the interest it was intended to protect and was unconstitutional as it infringed upon Arganbright's First Amendment rights. 

FOOTNOTES

[1] The majority notes additionally that it is within the Oklahoma Legislature's authority "to establish the 'age of consent' for sexual activity but still seek to discourage 16-year-old and 17-year-old youth from engaging in sexual activity." I would suggest that protecting minors from luring and abduction, sexual exploitation, child pornography, sexual abuse, human trafficking and child prostitution by preventing individuals from using electronic technology to sexually exploit or sexually abuse minors is a vastly different objective than seeking to discourage sixteen and seventeen year old minors from participating in lawful sexual activity. The latter objective is not a compelling State interest for purposes of this First Amendment analysis as it is clearly not the interest the Legislature sought to promote by enacting Section 1040.13a(A). It is, thus, irrelevant to this Court's First Amendment analysis.

[2] The majority agrees with the State that Section 1040.13a(A) is "narrowly tailored to the compelling interest it is intended to protect as it is the least restrictive means to protect minors from individuals using technology to sexually exploit or abuse them." It does not, however, take much effort to think of a situation where the plain language of the statute would operate to prohibit speech not contemplated by Section 1040.13a(A) such as text communications exchanged by two seventeen year old peers who are involved with one another. Again, while sexual activity between sixteen and seventeen year old youth is not something to be encouraged, neither is it illegal under the current law, and the statutory language of Section 1040.13a(A) prohibiting communication about it certainly does not further the compelling State interest of protecting minors from individuals using technology to sexually exploit or sexually abuse them.

[3] As is noted in the Specially Concurring Opinion, it is advisable that the Oklahoma Legislature amend 21 O.S.2011, § 1111(7) to include within the definition of rape the circumstance where a law enforcement officer uses his or her apparent authority to accomplish sexual intercourse with a victim between the ages of sixteen and eighteen. If this statutory provision had been in place when the communication at issue in the present case occurred, the text messages sent by Arganbright would not have been protected speech because they would have been encouraging an illegal act.

[4] Oklahoma is one of several states that have set the age of consent at 16. Some states have set the age of consent at 17 and 18 years of age. See Compare Age of Consent & Statutory Rape Laws by State, FindTheData (2013), http://age-of-consent.findthebest.com. 

 

 





 Citationizer© Summary of Documents Citing This Document
Cite
 Name
 Level
 None Found.
Citationizer: Table of Authority
Cite
 Name
 Level
 Oklahoma Court of Criminal Appeals Cases Cite
Name
Level 1988 OK CR 88, 755 P.2d 97, SALYERS v. STATE
Discussed at Length 1990 OK CR 13, 787 P.2d 864, STATE v. HUNTER
Discussed 1990 OK CR 27, 792 P.2d 1186, VIRGIN v. STATE
Discussed 1993 OK CR 8, 847 P.2d 368, ROMANO v. STATE
Discussed 1993 OK CR 54, 868 P.2d 709, STATE v. RAMSEY
Discussed 1996 OK CR 8, 910 P.2d 1084, WALLACE v. STATE
Discussed 1996 OK CR 55, 932 P.2d 22, Benjamin Lozoya v. State
Discussed 2002 OK CR 17, 46 P.3d 154, STATE v. HOWERTON
Discussed 2006 OK CR 19, 139 P.3d 907, HOGAN v. STATE
Discussed 2011 OK CR 6, 248 P.3d 918, HARMON v. STATE
Discussed 2012 OK CR 8, 281 P.3d 1283, MURPHY v. STATE
Discussed at Length 2012 OK CR 14, 288 P.3d 247, STATE v. STICE
Discussed at Length 2013 OK CR 1, 293 P.3d 198, MALONE v. STATE
Discussed 1965 OK CR 70, 404 P.2d 71, THOMAS v. STATE
Discussed 1953 OK CR 163, 264 P.2d 375, 97 Okl.Cr. 356, HISEL v. STATE
Discussed 1997 OK CR 18, 935 P.2d 366, Wallace v. State
Discussed 1999 OK CR 14, 989 P.2d 949, 70 OBJ 1076, State v. Young
Discussed
Title 21. Crimes and Punishments Cite
Name
Level 21 O.S. 13.1, Minimum Sentences - Defined Crimes
Cited 21 O.S. 2, Definition and Limitation on Criminal Acts
Cited 21 O.S. 888, Forcible Sodomy
Cited 21 O.S. 1021.2, Minors - Obscene or Indecent Writings, Pictures, Etc.
Cited 21 O.S. 1029, Engaging in or Soliciting Prostitution - Residing or Remaining in Place for Prohibited Purpose - Aiding, Abetting, or Participating in Prohibited Acts - Child Prostitution - Human Trafficking
Cited 21 O.S. 1040.11, Short Title
Cited 21 O.S. 1040.13, Prohibited Acts - Felony
Cited 21 O.S. 1040.13a, Soliciting Sexual Conduct or Communication with Minor by use of Technology - Penalty - Jurisdiction
Discussed at Length 21 O.S. 1040.75, Definitions
Cited 21 O.S. 1111, Rape Defined
Discussed at Length 21 O.S. 1120, Penalty for Seducing Unmarried Female Under Promise of Marriage
Cited 21 O.S. 1123, Lewd or Indecent Proposals or Acts to Child Under 16
Discussed at Length
Title 43. Marriage Cite
Name
Level 43 O.S. 3, Persons Having Capacity to Marry
Cited
Title 74. State Government Cite
Name
Level 74 O.S. 151.1, Internet Crimes Against Children (ICAC) Unit
Cited